# Exhibit A

## SETTLEMENT AGREEMENT AND RELEASE OF ALL CLAIMS AND HOLD HARMLESS AND INDEMNIFICATION AGREEMENT

This Settlement Agreement and Release of All Claims And Hold Harmless and Indemnification Agreement ("Agreement") is made this ____ day of _____, 2017, by and between Julie Seidel, including her heirs, agents, and assigns ("Ms. Seidel"), and Don Vick, including his heirs, agents, and assigns ("Mr. Vick"), and Richmond Realty, LLC including its current, former and successor affiliated or related entities, partnerships, subsidiaries, owners, members, executives, shareholders, officers, directors, employees, representatives, agents, attorneys, insurers, successors and assigns ("Richmond") (Mr. Vick and Richmond defined collectively as "the Employer" or "Releasees") (collectively referred to as "the Parties").

**WHEREAS,** Ms. Seidel performed work for Richmond during all pertinent times herein; and

**WHEREAS**, the Parties desire to resolve any and all differences and disputes which do or may exist, were or could have been alleged in a charge, claim or lawsuit or did arise or could have arisen out of the dealings between Ms. Seidel and Releasees and/or Ms. Seidel's employment with Employer and specifically any and all bona fide disputes under the Fair Labor Standards Act, 29 U.S.C. §§201 *et. seq.* ("FLSA"); Ohio Minimum Fair Wage Standards, Ohio Revised Code §4111 *et seq*., and the Ohio Prompt Pay Act, R.C. §4113.15 and the Ohio Constitution, Oh. Const. Art. II §34a. ("the Ohio Acts"); FLSA retaliation; and any and all controversies, claims, charges, demands, damages, actions and causes of action, both known and unknown, up to, and including, the date this Agreement is executed; and

**WHEREAS**, the Parties also desire to avoid the costs, expenses, and inconvenience of litigation and to settle fully and finally all matters between them, including, but not limited to, any and all controversies, claims, demands, damages, actions and causes of action, both known and unknown, that Ms. Seidel brought or could have brought for damages or relating to or arising of the dealings between Ms. Seidel and Releasees and/or Ms. Seidel's employment with Employer and/or any and all controversies, claims, demands, damages, actions and causes of action, both known and unknown, that Ms. Seidel brought or could have brought for damages or otherwise against Releasees up to, and including, the date this Agreement is executed;

**NOW, THEREFORE,** in consideration of the mutual promises and agreements contained herein, and other good and valuable consideration, the sufficiency and receipt of which are hereby acknowledged, and intending to be legally bound, the Parties agree as follows:

1.      Releasees are entering into a compromise of a bona fide disputed claim under the the FLSA, the Ohio Acts, FLSA retaliation and any and all other causes of action and Releasees continue to vigorously deny any violation of any law or any of Ms. Seidel's rights.  By entering this Agreement, Releasees do not admit any liability for any claim asserted by Ms. Seidel or for any claim whatsoever.

**2.      Ms. Seidel's Obligations**

(a)      Ms. Seidel, on behalf of herself, her heirs, representatives, agents and assigns and anyone claiming through her by dower or otherwise hereby COVENANTS NOT TO SUE OR OTHERWISE VOLUNTARILY PARTICIPATE IN ANY LAWSUIT AGAINST, FULLY RELEASES, INDEMNIFIES, HOLDS HARMLESS and OTHERWISE FOREVER DISCHARGES Releasees from any and all actions, charges, claims, demands, damages, promises, contracts, lawsuits, and obligations (including claims for unpaid wages, back-pay, compensation, overtime, liquidated damages, or any past or future earnings) or liabilities of any kind or character whatsoever, known or unknown, which Ms. Seidel now has or may have had whether or not based on or arising out of the dealings between Ms. Seidel and Releasees and/or Ms. Seidel's employment with Employer through the date of execution of this Agreement.  Ms. Seidel acknowledges and understands that in the event she files a charge with the Equal Employment Opportunity Commission, Ohio Civil Rights Commission, Department of Labor or any state-equivalent agency, Ms. Seidel shall be entitled to no remuneration, damages, liquidated damages, back pay, front pay, or compensation whatsoever from the Company as a result of such charge.  The rights and claims and prospective rights and claims so waived and released shall include, but are not limited to claims of discrimination, retaliation, interference and harassment on any basis, including race, color, religion, sexual orientation, veteran status, age, gender, disability, national origin, and all claims under the Fair Labor Standards Act, 29 U.S.C. §§201, et. seq., the Ohio Minimum Fair Wage Standards, Ohio Revised Code §4111 et seq., the Ohio Prompt Pay Act, R.C. §4113.15, the Ohio Constitution, Oh. Const. Art. II §34a, Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1991; 42 U.S.C. §§2000e et. seq., the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§1001 et. seq., the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§621 et. seq., (including without limitation the Older Workers' Benefit Protection Act), the Americans with Disabilities Act, 42 U.S.C. §§12101 et. seq., the Rehabilitation Act of 1973, 29 U.S.C. §§701 et. seq., the Reconstruction Era Civil Rights Acts, as amended, 42 U.S.C. §§1981 et. seq., the Ohio Civil Rights Act, R.C. 4112, the Ohio Whistleblower's Act, U.S.C. §4113.52 et. seq., the Worker Adjustment and Retraining Notification Act; the Equal Pay Act; the Sarbanes-Oxley Act of 2002; the Employee Polygraph Protection Act; the Health Insurance Portability and Accountability Act of 1996 ("HIPPA") and any other federal, state, city, or local statute, regulation, or ordinance; any claims relating to the conduct, including action or inaction of Employer;  any claims for personal or physical injury, emotional or mental distress, pain, or suffering; any cause of action or claim that could have been asserted in any litigation or other dispute resolution process, regardless of forum (judicial, arbitral or other); and all other causes of action sounding in contract, tort, criminal or other common law basis, including, but not limited to: the breach of any alleged oral, implied or written contract; negligent or intentional misrepresentations; defamation, libel and/or slander;  interference with contract or business relationship; negligent or intentional infliction of emotional distress; promissory estoppel or reliance; claims in equity or public policy; fraud;  invasion of privacy; whistleblower claims;

willful and reckless conduct; constructive discharge; retaliation; distress, humiliation, loss of standing prestige and reputation; stalking; and all claims for damages, whether equitable, compensatory, liquidated, double, treble, punitive, front pay, back pay, interest or in the form of costs, expenses, legal and/or attorneys' fees, and litigation costs including experts' fees or other forms of relief and any other claims, whether now known or unknown, asserted or unasserted, discovered or undiscovered, through the date of execution of this Agreement.

(b)     Ms. Seidel expressly agrees and acknowledges that the payments herein are in full and final resolution and satisfaction of a bona fide dispute as to damages including, but not limited to, unpaid minimum and overtime wages, if any, and that the payment of Four Thousand and 00/100 ($4,000.00) Dollars for unpaid minimum wages and overtime is fair and reasonable and fully compensates Ms. Seidel for any and all hours suffered or permitted to be worked for Employer. Ms. Seidel further expressly agrees and acknowledges that in the event that Ms. Seidel would be entitled to liquidated damages under the FLSA and/or the Ohio Acts, Eight Thousand and 00/100 ($8,000.00) Dollars for alleged liquidated damages would be the full and complete owed to her.

(c)     Ms. Seidel agrees to not disparage Releasees in any way. This provision shall not affect Ms. Seidel's obligation to provide truthful testimony under oath in a legal proceeding, including any proceeding in which she may be required to testify.

(d)     Ms. Seidel states and represents that no bankruptcy action is presently pending in which she is the one seeking bankruptcy. Ms. Seidel acknowledges that the Releasees are entering into this agreement in reliance upon this warranty by Ms. Seidel. Ms. Seidel hereby agrees to save, defend and hold harmless the Releasees from any and all claims, costs and damages of whatever nature (including reasonable attorneys' fees), in the event that Ms. Seidel is, in fact, a party to bankruptcy proceedings at such time as to affect the rights of any of the Releasees under this Agreement.

(e)     Ms. Seidel affirms, covenants, and warrants she has made no claim against, nor is she aware of any facts supporting any claim against, the Releasees under which the Releasees could be liable for medical expenses incurred by the Employee before the execution of this Agreement. Furthermore, Employee is aware of no medical expenses which Medicare has paid to her and for which Releasees are or could be liable. Ms. Seidel agrees and affirms that, to the best of her knowledge, no liens of any governmental entities, including those for Medicare conditional payments, exist. Ms. Seidel will indemnify, defend, and hold Releasees harmless from Medicare claims, liens, damages, conditional payments, and rights to payment, if any, including attorneys' fees, and Ms. Seidel further agrees to waive any and all future private causes of action for damages pursuant to 42 U.S.C. § 1395y(b)(3)(A) et seq.

3.     **Releasees' Obligations**

(a)     Within fourteen (14) days after Releasees receive a copy of this Agreement fully executed by the Parties and approval by the Court, Releasees will deliver the following payments to Ms. Seidel's attorneys, Robert E. DeRose, Esq., Molly K. Tefend, Esq., Jason C. Cox, Esq. and Barkan, Meizlish, Handelman, Goodin, DeRose, Wentz LLC, whose tax identification number is 13-4316646.

(i)    Four Thousand and 00/100 ($4,000.00) Dollars in a check made payable to "Julie Seidel" in satisfaction of claims for alleged damages for unpaid minimum wages and overtime. All applicable withholdings will be withheld from this payment and a Form W-2 will be issued to Ms. Seidel with respect to this payment;

(ii)    Eight Thousand and 00/100 ($8,000.00) Dollars in a check made payable to "Julie Seidel" in satisfaction of claims for alleged liquidated damages. Releasees shall issue a Form 1099-Misc. to Ms. Seidel with respect to this payment; and

(iii)    Eight Thousand and 00/100 ($8,000.00) Dollars in a check made payable to "Barkan, Meizlish, Handelman, Goodin, DeRose, Wentz L.L.P." Releasees shall issue a Form 1099-Misc. to Barkan, Meizlish, Handelman, Goodin, DeRose, Wentz L.L.P. with respect to this payment; and

(iv)    Four Hundred and 00/100 ($400.00) Dollars in a check made payable to "Barkan, Meizlish, Handelman, Goodin, DeRose, Wentz L.L.P." for payments of costs associated with the filing of this the action to obtain Court approval. Releasees shall issue a Form 1099-Misc. to Barkan, Meizlish, Handelman, Goodin, DeRose, Wentz L.L.P. with respect to this payment; and

(v)    Releasees may combine the amounts in Section 3(a)(iii) and 3(a)(iv) above in one singular check made payable to "Barkan, Meizlish, Handelman, Goodin, DeRose, Wentz L.L.P." and may issue one singular Form 1099-Misc. to Barkan, Meizlish, Handelman, Goodin, DeRose, Wentz L.L.P. with respect to these payments; and

(b)    Ms. Seidel affirms and warrants that Releasees have no obligation to withhold on the payments under paragraph 3(a)(ii) and 3(a)(iii) of this Agreement, that these payments do not represent overtime or wages in any way, and that she or Barkan, Meizlish, Handelman, Goodin, DeRose, Wentz LLC are solely responsible for payment of all applicable taxes, if any, in a timely manner. If any local, state, or federal authority determines that withholding should have occurred, Ms. Seidel and Barkan, Meizlish, Handelman, Goodin, DeRose, Wentz LLC shall hold harmless and indemnify Releasees for any costs, expenses, or penalties, including attorneys' fees, with respect to the payment of taxes or failure to withhold on the payment made to her under paragraph.

(c)    Ms. Seidel, by signing this Agreement, acknowledges that she had up to at least 21 days to consider this Agreement and 7 days after signing it to revoke the portion of this Agreement relating to any claims under the ADEA. If Ms. Seidel decides to revoke the portion of this Agreement relating to any claim under the ADEA, she must do so by certified mail to: Jill T. O'Shea, Cohen Todd Kite & Stanford, LLC, 250 East Fifth Street, Suite 2350, Cincinnati, Ohio, 45202-4139.

(d)    Ms. Seidel represents that in executing this Agreement she does not rely and has not relied upon any representation or statement by Releasees or their counsel which is not in this Agreement with regard to the subject matter, basis, or effect of this Agreement. Ms. Seidel acknowledges that this Agreement is the final understanding and sole agreement between

the parties and supersedes any prior agreements or understandings between the parties with respect to the subject matter hereof.

**4.** **The Parties' Obligations**

(a)     Effective on the date this Agreement is finalized and Court approved, Ms. Seidel shall be treated as an at will employee employed by Richmond.

(b)     Effective on the date this Agreement is finalized and Court approved, Ms. Seidel shall be subject to a W-2 and paid an hourly wage of $8.50 an hour on a bi-weekly basis, less applicable withholdings, for all approved hours worked in each workweek. The workweek shall be Sunday through Saturday.

(c)     The Parties agree that Ms. Seidel shall be required to sign and comply with the agreed upon Job Description, attached as Exhibit 1, which the Parties agree is fair and reasonable.

(d)     The Parties agree that, consistent with the Exhibit 1, Ms. Seidel's part time work shall be a minimum of twenty (20) hours of work per workweek provided that Ms. Seidel is capable and performing the job duties and responsibilities of Exhibit 1 to a maximum of thirty (30) hours of work per workweek and which include weekend or evening hours.

(e)     The Parties agree that Ms. Seidel shall be required to obtain prior approval from Richmond Realty, LLC before working over thirty (30) hours in a workweek. Ms. Seidel understands and agrees that it shall be the policy of Richmond Realty, LLC that hours worked over thirty (30) hours are prohibited other than by approval by Don Vick and/or the Property Owner's representative.

(f)     The Parties agree that Ms. Seidel shall be required to fill out and sign daily time sheets which she certifies as true and accurate, attached as Exhibit 2, and to submit the signed certified daily time sheets weekly on Monday by 9:00 a.m. to Richmond Realty, LLC and which are subject to approval by Richmond Realty, LLC on a weekly basis.

(g)     Effective on the first day of the month after this Agreement is finalized and Court approved, Ms. Seidel and Richmond Realty, LLC shall enter into a Rental Agreement, attached as Exhibit 3, at her current, reasonable and fair rate of $540.00 a month..

(h)     Ms. Seidel voluntarily agrees that she shall continue to reside at Apartment 14, Westwood Garden Apartments, 3334 Gerold Drive, Cincinnati, Ohio 45238 consistent with Exhibit 1, the agreed upon Job Description.

(i)     While Ms. Seidel is employed by Richmond Realty, LLC, the Parties agree that Richmond Realty, LLC shall treat $360.00 (or if subject to future increases in the rate of monthly rent, Section 4(h)(ii) applies)) of the monthly rent as a reasonable cost of furnishing lodging and supplement to cash wages. The bi-weekly reasonable cost to Richmond Realty, LLC of $166.15 shall be subject to applicable withholding in Ms. Seidel's bi-weekly paychecks. The Parties agree that Ms. Seidel shall be required to pay the remainder of rent of $180.00 to Richmond Realty, LLC consistent with Exhibit 3.

(ii)    The Parties agree that Ms. Seidel shall also be subject to future increases in the rate of rent, if any, consistent with comparable apartment units at Westwood Gardens Apartments imposed by Richmond Realty, LLC, in compliance with Section 4(h)(i), whereby Ms. Seidel is responsible for one-third of the reasonable and fair monthly rental rate and Richmond Realty, LLC is responsible for two-thirds of the reasonable and fair monthly rental rate. Richmond Realty, LLC's two-thirds amount of the monthly rental rate will be treated by Richmond Realty, LLC as a cost of furnishing lodging and supplement to cash wages to Ms. Seidel while employed by Richmond Realty, LLC.

(iii)    The Parties further agree that in the event that Ms. Seidel is no longer employed with Richmond Realty, LLC and/or incapable and not performing the job duties and responsibilities of Exhibit 1, the agreed upon Job Description; Exhibit 3 shall be null and void and Ms. Seidel shall be required to pay the full rate of rent to Richmond Realty, LLC consistent with comparable apartment units at Westwood Garden Apartments.

5.    If any provision of this Agreement is found by a court to be unenforceable, then the remainder of this Agreement shall remain in full force and effect, except that paragraph 2(a) constitutes the essence of this Agreement, and therefore if any part of paragraph 2(a) is found to be unenforceable for any reason, then this entire Agreement fails and must be deemed void.

6.    The Parties further agree that this Agreement shall be enforced under the laws of Ohio.

7.    The Parties likewise agree that they may sign this Agreement in counterparts and any copy or facsimile signature shall be as effective as an original signature.

8.    The Parties admit that they have been advised of their rights to consult with counsel and have done so prior to signing this Agreement.

## REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK

DocuSign Envelope ID: 1BE13819-00B4-4EF3-9054-DC3046E2FCD1

**MS. SEIDEL, BY SIGNING THIS AGREEMENT, UNDERSTANDS THAT SHE HAS WAIVED ALL CLAIMS AGAINST THE EMPLOYER (AS DEFINED IN THIS AGREEMENT), AND ALL CLAIMS TO, UNPAID MINIMUM WAGE, UNPAID OVERTIME, BENEFITS, OR PAYMENT OF ATTORNEYS' FEES OR OTHER DAMAGES. MS. SEIDEL ACKNOWLEDGES THAT THE BENEFITS SHE IS TO RECEIVE UNDER THIS AGREEMENT ARE BENEFITS TO WHICH SHE IS NOT OTHERWISE ENTITLED. MS. SEIDEL ENTERS INTO THIS AGREEMENT KNOWINGLY, VOLUNTARILY, AND AFTER HAVING THE OPPORTUNITY TO CONSULT WITH COUNSEL AND TO REVIEW THIS DOCUMENT IN ITS ENTIRETY.**

_Julie Seidel_                             7/7/2017

Julie Seidel                                 Date

Richmond Realty, LLC

By: _Donald Vick_                      7-7-17

       Donald Vick, Managing Member          Date

Approved to be treated as confidential, and any claims against Releasees for attorneys' fees is hereby waived, except as provided for herein.

Barkan, Meizlish, Handelman, Goodin, DeRose, Wentz L.L.P.

By: _[signature]_

Title: Attorney

Date: 7/7/17

954280.1

7

# EXHIBIT 1

## EXHIBIT 1

**Part Time Property Manager**
**Reports to:  Property Owner's Representative and/or Don Vick**
**Wage Status:  Hourly**

## DUTIES AND RESPONSIBILITIES:

On Site
- Shall be required to reside on site at Westwood Garden Apartments.

Communication with Property Owner's Representative
- Courteous, efficient and professional communication with Property Owner's Representative by phone and/or in person
- Perform duties as assigned by Property Owner's Representative and/or Don Vick or emergency tasks  as required
- No regularly scheduled  work and/or office hours
- Part time work from a minimum of twenty (20) hours of work per workweek,  provided that Property Manager is capable and performing the job duties and responsibilities herein, to a maximum of thirty (30) hours of work per workweek and which include weekend or evening hours
- Shall be required to obtain prior approval from Property Owner's Representative and/or Don Vick before working over thirty (30) hours in a workweek.    It is the policy of Richmond Realty, LLC that hours worked over thirty (30) hours in a workweek are prohibited other than by approval by Don Vick and/or the Property Owner's representative.

Record Keeping:
- Maintain accurate and complete records:
  - Rent receipt book
  - Rental applications and agreements
  - Move ins/ move outs
  - Relevant tenant/resident notices, i.e., noise complaints, grounds policy violations, etc.
- Fill out Notice to Vacate Premises  as required by  Property Owner's Representative and/or Don Vick
- Make any and all records available to Don Vick and/or Property  Owner's Representative  upon request
- Required to fill out and sign certified daily time sheet, attached hereto as Exhibit 2, to be submitted weekly on Mondays by 9:00 a.m.  to Don Vick and/or Property  Owner's Representative, and  which shall be subject to approval  by Don Vick and/or Property  Owner's Representative

Rental
- Responsible for renting vacant units and shall be conscientious about maintaining full occupancy
- Receive and timely respond to calls from prospective tenants in a courteous, efficient and professional manner

- Assist prospective tenant/residents with filling out Apartment Rental Application Forms
- Confer with Property Owner's representative concerning determination of deposit, pro-rating of rent
- Assist prospective tenant/residents with filling out Rental Agreements
- At time enter into Rental Agreement, provide new tenants/residents with notices as required by Property Owner's Representative, *i.e.*, Automobile/Parking Policy, Notice of Risks, Renter's Insurance Article, Disclosure of Information on Lead- Based Paints and Lead-Based Paint Hazards, Grounds Policy
- Collect rent, late payments and late fees which includes drop off by tenants/residents in door slot or in person
- Ensure rental applications, rental agreements and rent payment records are properly maintained
- Rents collected by Property Owner's Representative approximately 4 to 5 times a month

Vacancies
- Fill out top portion of Move Out Form
- When tenants/residents provide notice of moving out, fill out and maintain Notice to Leave the Premises
- Show vacant units to prospective tenants by appointment
- Show vacant units to prospective tenants that show up without an appointment, if reasonably feasible and possible

Notices
- Ensure distribution and/or posting of notices and/or written communications to residents/ tenants per below schedules or as required by Property Owner's Representative and/or Don Vick
  - Distribute late rent notices to residents as needed
  - Post notices of last day to pay and rent and water on the 3rd day of each month in the nine (9) entranceways
  - Distribute Water Management Solution notifications to tenants/residents bi-annually or as required by Property Owner's Representative and/or Don Vick
  - Post Notice To Residents regarding preventative bug spraying in nine (9) entranceways 2 to 3 times a year or as required by Property Owner's Representative and/or Don Vick
  - Distribute Rent Adjustment Notices to tenants/residents as required by Property Owner's Representative and/or Don Vick

Tenant/Resident Complaints
- Receive and respond to tenant/resident concerns, requests and emergencies on timely basis and in a courteous, efficient, consistent and professional manner
- Timely communicate and report tenant/resident complaints, requests or incidents to the Property Owner's Representative and/or Don Vick

Inspection and Maintenance of Common Areas
- Walk common areas one (1) time a week or at request of Property Owner's Representative and/or Don Vick
- Timely identify and report unsafe conditions and/or need for maintenance and/or repairs to Property Owner's Representative and/or Don Vick

- Pick up debris and items by dumpsters, parking lot, walkways  and exterior common one (1) time a week
- Clean front entranceway rugs and glass doors two (2) times a month
- Clean laundry room area including washers and dryers two (2) times a month
- Empty garbage cans two (2) times a month
- Perform miscellaneous minor maintenance and repairs,  *i.e.,*  sweep up broken glass
- Maintain set of keys to all apartments and provide access to locked out tenants/residents as needed

**GENERAL QUALIFICATIONS AND REQUIREMENTS**
- Positive attitude  and ability to communicate and to report effectively
- Able to perform tasks without supervision and maintain high level of efficiency
- Ensure all records are accurate, complete, and properly maintained
- Honesty, integrity, and professionalism
- Required to stand, walk, stoop, bend, kneel or crouch.  Occasionally exposed to outside weather conditions and may lift up to 25 pounds.

954113.1

# EXHIBIT 2

**EXHIBIT 2**

**RICHMOND REALTY, LLC**
**DAILY TIMESHEET**

| DATE | START TIME | STOP TIME | DESCRIPTION |
|------|-----------|-----------|-------------|
|      |           |           |             |
|      |           |           |             |
|      |           |           |             |
|      |           |           |             |
|      |           |           |             |
|      |           |           |             |
|      |           |           |             |
|      |           |           |             |
|      |           |           |             |
|      |           |           |             |
|      |           |           |             |
|      |           |           |             |
|      |           |           |             |
|      |           |           |             |
|      |           |           |             |
|      |           |           |             |

**I, Julie Seidel, certify that the above is true and accurate.**

_____  _____
**Julie Seidel**                               **Date**

_____  _____
**Richmond Realty LLC**                   **Date**

# EXHIBIT 3

## RENTAL APPLICATION AND RENTAL AGREEMENT

Tenant name: <u>Julie Seidel</u> ██████████████████████

In case of emergency call ███████████████████████████████████

List occupants of apartment <u>Julie Seidel</u>

This Agreement is hereby entered into between Richmond Realty, LLC and the above-named Tenant. This agreement begins on .................., 2017 and ends on ...............2017, subject to the following terms and conditions.

     The rent shall be $540.00 per month during the term of this agreement, whether Tenant occupies the apartment or not. While employed by Richmond Realty, LLC, Richmond Realty, LLC shall treat $360.00 (or two-thirds) of the monthly rent as a reasonable cost of furnishing lodging and supplement to cash wages. The bi-weekly reasonable cost to Richmond Realty, LLC of $166.15 shall be subject to applicable withholding in Julie Seidel's bi-weekly paychecks. Julie Seidel shall be required to pay the remainder of rent of $180.00 to Richmond Realty, LLC consistent with the terms of this Agreement.

     Julie Seidel shall also be subject to future increases in the rate of rent, if any, consistent with comparable apartment units at Westwood Gardens Apartments imposed by Richmond Realty, LLC and shall be required to pay the differential between the increased rate of rent and $360.00 of the monthly rent treated by Richmond Realty, LLC as a cost of furnishing lodging and supplement to cash wages to Julie Seidel. In the event Julie Seidel is subject to future increases in the rate of rent, Richmond Realty, LLC also agrees to increase the amount they will treat as a reasonable cost of furnishing lodging and supplement to cash wages, in a proportional amount equivalent to two-thirds of the increased rate. In the event that Julie Seidel is no longer employed with Richmond Realty, LLC and/or incapable and not performing the job duties and responsibilities her agreed upon Job Description as Part Time Property Manager; this Agreement shall be null and void and Julie Seidel shall be required to pay the full rate of rent to Richmond Realty, LLC consistent with comparable apartment units at Westwood Garden Apartments

     All rent is due on the first of the month. If the rent has not been received by the third of any month, a $20.00 late charge will be added. Once this Agreement is signed, the security deposit will not be returned for any reason, until Tenant occupies the apartment at least 12 months. Late acceptance of the rent by Owner is not to be construed as a precedent for future late payments.

     A deposit in the amount of $380.00 was paid to occupy Apartment ████ and shall be used as a security deposit for Apartment ████ n which Tenant presently occupies. If Tenant fulfills all the terms of this agreement and vacates the apartment after properly filing a Departure Notice Form, this deposit may be refunded. Tenant must turn in all keys, provide management with written 35 day notice of intention to move, fill out departure notice form, clean all appliances thoroughly and

completely vacate the apartment by 11:00 am of any month subjects the tenant to liability for that month's full rent. Failure to turn in keys constitutes occupancy.

The apartment is to be occupied by the persons whose names appear above; neither may the apartment be sub-let without the prior written consent of Owner. The use of the apartment for any illegal purpose brings about immediate eviction.

Owner shall not be liable for any damage occasioned by accidents of failure or any part of the fixtures, appliances, pipes, sewage, etc., or for any damage arising from the acts or neglect of other tenants or the elements or damage arising from acts which had not been caused directly by the Owner.

If Tenant fails to pay the rent when due or violates any of the rules and regulations made a part hereof, Owner has the right to do whatever is necessary to regain possession of the apartment and the deposit is forfeited, all without prejudice to any of the rights of Owner.

Tenant agrees to the condition of the apartment as itemized on the attached sheets.

The term "Owner" refers also to Owner's agents.

One or more waivers of any provisions or part thereof above is not to be construed as a precedent or prejudice Owner's rights.

| | |
|---|---|
| _____ | _____ |
| Richmond Realty, LLC | Julie Seidel |
| Car Inspection: | Social Security #_____ |
| Make _____ | |
| Year _____ | _____ |
| Condition _____ | Tenant |

You must physically inspect car.

## APARTMENT RULES AND REGULATIONS

The following rules and regulations have been drawn up for the convenience of all concerned. Abiding with these rules is a requirement for the fulfillment of the Rental Agreement. ████████████

Tenant's mailing address is _____

Water and heat are furnished. Tenant is responsible for his own electricity and must call Duke Energy at 1-800-544-6900 to change electrical service to Tenant's name.

Late Rent

All rent is due on the first of every month. If rent is not received by the third of any month, a $_____ late charge is required to be paid. Any rent after the third day of the month must be paid in cash or money order, as no personal checks will be accepted. Any rent, including late charges not received by the third of the month may result in initiation of eviction proceedings.

Use and Condition of Apartment

A cutting board must be used to avoid scratching the kitchen countertop.

Tenant must not leave any exposed food or garbage or any other odor-causing or insect-causing problems inside the apartment.

Any maintenance or repair calls caused by the negligence of tenant will be charged to the tenant.

Tenant agrees that he will not use nor allow the premises to be used in any noisy or boisterous way or use loud music that would disturb other tenants.

If the apartment is not carpeted, tenant is required to furnish his own carpeting to cut down on the noise factor for other tenants. At least 75% of floor area must be covered.

All water leaks must be reported to the office as they occur.

Tenant may not install or use any major appliances other than those provided without written permission of Owner.

Coin-operated wash machines are provided on lower level and tenant may not use their own wash machine. All machines are used at tenant's risk.

DocuSign Envelope ID: 1BE13819-00B4-4EF3-9054-DC3046E2FCD1

No painting, paperhanging or otherwise altering the structural appearance of the premises is permitted.  Picture hanging is allowed by means of nails, however, never use any adhesive hangers.

Disposal – Always run cold water while disposal is on.  Do not grind any hard objects in disposal, such as bones, onion skins, eggshells, corn husks, watermelon rinds, etc.

Toilets – No paper products other than toilet paper are to be disposed of in the toilets.  All other paper products such as napkins, facial tissue, sanitary products, Pampers, etc., cause major problems.

Windows – Never_____ your apartment with any window open; our rapidly changing Cincinnati we _____ make a sunny day a stormy one in no time.  Window shades must be maintained in all windows at all times at Tenant's expense.  This is to eliminate heat loss.

No babysitting on a regular basis of non-tenant children is permitted.  Also, no visiting children are permitted on a regular basis.

$150.00 deposit – waterbeds.

No automobiles or cars not being used are permitted to use the parking lot.  Also, no auto repair is permitted on the premises, an all automobiles which detract from the general appearance of the premises must be removed within 3 days.

Any damage caused by tenants or tenant's guest will be charged to tenant and must be paid within 5 days. Failure to pay may result in eviction proceedings.

Repairs – Owner or maintenance crew are permitted to enter the apartment for emergency purposes and only after adequately knocking at the door.

Personal property – personal property of any description, including children's toys, left outside the apartment during occupancy or in the apartment after vacating will be considered abandoned and will be disposed of at the discretion of the manager.

Violations of the above rules can bring about an eviction action and/or charges against tenants' deposit.  Charges will be assessed for all violations, including, but not limited to violation of automobile rules, noise regulations, etc.

Pool

Vehicles

One parking spot is assigned per apartment unless otherwise specified. Please always park between lines or in designated areas only. Non-operational vehicles must be removed from the premises. No tenant is permitted to use more than 2 parking spaces. No noise-making vehicles are permitted on the premises. No motorcycles, boats, trucks (other than 4-wheel, pick-up or small 4-wheel vans) are permitted on the lot overnight.

The rental agreement and these rules and regulations constitute the entire agreement and no other representations or agreements have been made or relied upon.

Make checks payable to: ___Richmond Realty, LLC

Mail check to: __Deliver to Apartment█

Your resident manager is __Julie Seidel_Phone: _██████████_____

Please notify the resident manager before you intend to move items into or out of the apartment.

_Julie Seidel_____
Tenant

_____
Tenant

954305.1